**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dominic Alfred Medina,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Ryan Thornell,<br><br>　　　　Defendant. | No. CV-21-00204-TUC-JGZ<br><br>**ORDER** |

　　　　Plaintiff Dominic Alfred Medina, proceeding pro se, filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) On September 29, 2023, the Court granted in part and denied in part Defendant Ryan Thornell's Motion for Summary Judgment. (Doc. 67 at 13.) In the Order, the Court stated its intent to enter sua sponte summary judgment on the merits in favor of Thornell and provided both Medina and Thornell an opportunity to respond. (*Id.*) Medina filed his response on December 1, 2023. (Doc. 72.) Thornell did not file a response. Having considered Medina's response, the Court will not enter summary judgment in favor of Defendant Thornell. Rather, the Court will grant Plaintiff leave to file an amended complaint.

**I.　　FACTUAL AND PROCEDRUAL HISTORY**

　　　　The Court's September 29, 2023 Order details the factual and procedural history of this case. (Doc. 67.) The facts relevant to the present issue are as follows.

　　　　In January 2013, the Arizona Department of Corrections (ADC) validated Plaintiff Dominic Alfred Medina (Medina) as a member of the New Mexican Mafia under Security Threat Group (STG) policy. (Doc. 67 at 4.) Medina was accepted into the Step-Down

Program three years later in 2016. (*Id*. at 4-5.) The Step-Down Program permits validated STG members in maximum custody to show ADC staff that they are no longer involved with their STG by gradually removing themselves from STG activities. (*Id*. at 3.) While validated STG members are housed in maximum custody, the Step-Down Program provides an opportunity to be transferred to less restrictive close custody. (*Id.*) Medina reached Phase V of the Step-Down Program and was placed in close custody. (*Id.* at 5.)

Phase V is the final phase of the Program and is an indefinite period of monitoring for Step-Down inmates. (Doc. 38-1 at 34.) At any point in the Step-Down Program, ADC has the authority to remove an inmate from the Program if they commit certain violations. (Doc. 67 at 3.) These include violations involving cell phones and cell phone accessories. (*Id.*) Under DO 806, before ADC removes an inmate from Phase IV or V, ADC must provide them with (1) notice of a hearing and ten days to prepare a defense; (2) a hearing; and (3) the opportunity to appeal the decision and result of the hearing. (*Id.*)

From August 2019 to December 2020, Medina incurred three disciplinary violations: Medina could not produce a urine sample in the allotted time, Medina was observed in possession of a cell phone, and a SIM card was found concealed in Medina's cell wall. (*Id.* at 5.) For each of these violations, Medina was afforded notice and a hearing. (Doc. 38-1 at 42, 52, 59.)

On December 29, 2020, Special Security Unit (SSU) Statewide Coordinator C. Reyna formally recommended to M. Basturo, Lieutenant Arizona State Prison Complex (SPC)-Tucson/SSU Coordinator, that Medina be "revoked" from the Step-Down Program because the three disciplinary violations met the criteria for revocation. (Doc. 38 at ¶ 24.)

Medina was removed from close custody and returned to maximum custody at the ASPC Eyman-Browning Unit on January 11, 2021. (*Id.* at ¶ 56.)

On January 14, 2021, three days after Medina's removal from close custody, ADC completed a classification review of Medina's custody assignment. (Doc. 67 at 5.) According to the Notice of Hearing and Inmate Rights (Proposed Maximum Custody Placement) form, Medina was provided notice of his custody redetermination hearing on January 14 and initialed next to a check-marked box that he was waiving his right to 48-

hour notice of hearing. (Doc. 38-1 at 69-70.) A hearing was conducted the same day. (*Id.*) The "Rationale for placement" section of the form stated:

> [Medina] is triggering for STG change and now scores 65,49 (Max, 5). Inmate Medina . . . is a validated STG (Arizona Mexican Mafia.) [sic.] Inmate Medina . . . has been revoked and removed from the STG Step Down Program.

(*Id.* at 69.) Medina's three disciplinary violations are not mentioned. According to the Maximum Custody Placement Recommendation/Approval form, Medina was present for the hearing but did not submit a written statement or request witnesses. (*Id.* at 67-68.) The "[e]vidence relied on" section simply states "STG." (*Id.*) Medina's reclassification was approved. (*Id.*)

Medina administratively appealed ADC's failure to provide him with the reasoning for his change in status, notice, and a hearing prior to his removal from close custody and transfer to maximum custody. (*Id.* at 77-81.) He submitted an Informal Complaint and a Formal Grievance. (Doc. 67 at 5.) ADC returned the grievance unprocessed, stating Medina used the incorrect grievance form and could not make complaints about his classification with a standard DO 802 grievance. (*Id.*) On March 5, Medina submitted a Grievance Appeal. (*Id.* at 6.) ADC returned the appeal unprocessed because it was untimely and incorrectly submitted. (*Id.*)

Despite rejecting his appeals, ADC served Medina with a second Notice of Hearing on March 5, 2021, regarding his proposed maximum custody placement. (Doc. 38-1 at 73.) After "TRIGGER: MAX CUSTODY REVIEW," the "Rationale for placement" section now stated:

> RECOMMENDING THAT THIS INMATE STAY @ MAX DUE TO HIS STG VALIDATION, AS PER POLICY. I/M HAS NO ESCAPE HISTORY. HE IS PROGRAMING WITHOUT ANY REPORTED NEGATIVE BEHAVIORS. INMATE HAS RECEIVED THREE MAJORS IN THE PAST TWO YEARS.

(*Id.*) A second maximum custody placement hearing took place on March 8, 2021, almost two months after Medina had been placed in maximum custody. (Doc. 67 at 6.) At the second hearing, Medina received notice that he was being transferred to maximum custody

because of the three disciplinary violations. (Doc. 72.) Medina was present for the hearing, submitted a written statement, and requested witnesses. (*Id.*) Medina's maximum custody placement was approved a second time. (*Id.* at 74-75.)

On May 14, 2021, Medina filed a complaint in this Court alleging that the Defendants violated his Eighth Amendment rights and his Fourteenth Amendment right to due process by removing him from the Step-Down Program and placing him in maximum custody on January 11, 2021, without proper notice and a hearing. (Doc. 1.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a Fourteenth Amendment due process claim against Defendant Shinn in his official capacity and an Eighth Amendment conditions-of-confinement claim against Shinn in his official capacity. (Doc. 7.) The Court dismissed the remaining claims and Defendants. (*Id.*)

Four months later, on September 10, 2021, Medina renounced his STG membership and debriefed according to policy. (Doc. 67 at 6.) ADC accepted Medina's debrief. (*Id*. at 87.)

On March 10, 2022, Defendant Thornell moved for summary judgment asserting that Medina's due process claim was moot and that he did not exhaust his administrative remedies prior to filing suit. (Doc. 37 at 8.) On September 29, 2022, the Court dismissed Medina's Eighth Amendment conditions-of-confinement claim because Plaintiff failed to properly exhaust his available administrative remedies as to that claim. (Doc. 67 at 10-11.) The Court otherwise denied the Motion for Summary Judgment, finding that Defendant did not meet his burden at summary judgment to establish that Medina failed to exhaust his remedies as to the due process claim and did not demonstrate that the claim was moot. (*Id.* at 11.) The Court determined, however, that summary judgment may be appropriate on the ground that no additional process could have prevented Medina's transfer to maximum custody. (*Id.* at 12.) The Court ordered further briefing as to whether summary judgment was appropriate on this ground. The Court specifically instructed Medina to include in his response to the Court's directive: "(1) how ADC providing him with due process for his transfer to maximum custody could have prevented his transfer; (2) what facts essential to his claim are disputed; and (3) whether Medina disputes any of the four

facts[1] listed by the Court." (*Id.* at 11-13.)

In Medina's response to the Court, he does not dispute any facts, but argues that the lack of notice and a hearing prior to his transfer to maximum custody increased the risk of ADC erroneously placing him in maximum custody. (Doc. 72 at 2.)

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. In reviewing the evidence, the court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3). "Only admissible evidence may be considered by the trial court

---

[1] The facts were:
- Medina was a validated STG member, (Docs. 38 ¶ 21; 52 at 1–2);
- ADC policy requires the placement of validated STG members in maximum custody, (Docs. 38-1 at 26; 52 at 1–2);
- If an inmate in the Step-Down Program commits a major disciplinary violation, ADC may remove the inmate from the Program, (See Doc. 38-1 at 29, 34–35); and
- Medina committed three disciplinary violations, including at least one major disciplinary violation: the concealment of a SIM card in his cell wall, (see Docs. 38 ¶ 24; 38-1 at 74; 53 at 2).

(Doc. 67 at 12.)

in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1998).

A movant is entitled to judgment as a matter of law against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of at trial. *Celotex*, 477 U.S. at 322. In *Celotex*, the Supreme Court explained: "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322-23.

### III. PROCEDURAL DUE PROCESS

The Due Process Clause of the Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty or property, without due process of the law." U.S. Const. Amend. XIV, § 1. To analyze a procedural due process claim, the court must engage in a two-step analysis. First, the court must determine whether an individual was deprived of a constitutionally protected liberty or property interest. *United States v. 101 Houseco*, *LLC.*, 22. F.4th 843, 851 (9th Cir. 2022). Second, the court must examine whether that deprivation was accompanied by sufficient procedural protections. *Id.* Having reviewed Medina's response, the Court concludes that Medina was entitled to notice and hearing before he was transferred to maximum custody, which ADC did not provide. Therefore, the Court will allow Medina's claim to proceed.

#### i. Medina's Liberty Interest

Medina has a liberty interest in avoiding a return to maximum custody. Though the constitution does not recognize a liberty interest in avoiding transfer to more adverse conditions of confinement, an inmate has a liberty interest when such a transfer "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidences of prison life." *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Sandin v. Conner*, 515 U.S. 471 (1995). In this case, there is no

dispute that Plaintiff was subjected to conditions which constituted an atypical and significant hardship when he was moved to maximum security housing.

In *Johnson v. Ryan*, the plaintiff was a validated STG member participating in the Step-Down Program. 55 F.4th 1167, 1177 (9th Cir. 2022). ADC staff searched his belongings and found gang paraphernalia. *Id.* The plaintiff was terminated from the Program without receiving an explanation from ADC. *Id.* The plaintiff brought suit asserting that ADC's failure to provide him with adequate notice and a hearing violated his Fourteenth Amendment Due Process right. *Id.* at 1179. Although the court concluded that the plaintiff did not have a protected liberty interest in continued participation in the Step-Down Program, the court reiterated that he did have "a protected liberty interest in avoiding a return to maximum custody." *Id.* at 1197-98, 1201. Like the plaintiff in *Johnson*, Medina has a protected liberty interest in avoiding a return to maximum custody from close custody. Medina is therefore entitled to proper procedural protections before ADC may deprive him of the interest.

### ii. Sufficiency of Process

Because placement in maximum security segregation units implicates a liberty interest requiring due process protections, to satisfy the due process procedural requirement, the government must provide prisoners with "written notice of the factual basis for the placement" and "an opportunity to be heard" prior to transfer. *Wilkinson*, 545 U.S. at 225-27; *see also Mendoza v. Shinn*, 2023 WL 5951890 at *10 (D. Ariz. Sept. 13, 2023) (denying the ADC's motion for summary judgment because inmate did not receive notice and a hearing until one month after he was transferred to maximum security custody); *see also Padilla v. Shinn*, 2023 WL 6539895, at *6 (D. Ariz. Oct. 6, 2023) (denying summary judgment because Plaintiff was "entitled to due process procedures before he was moved to maximum custody" and it was "undisputed that Plaintiff did not receive [a hearing] until after he commenced this litigation").

Medina was transferred to the Browning Unit, maximum security custody, on January 11, 2021. (Doc. 38 at ¶ 56). Medina did not receive a maximum custody placement hearing before he was returned to maximum custody. (Doc. 1 at 8). ADC provided Medina

with notice and a hearing on January 14, 2021, three days after his placement in maximum custody. (Doc. 38-1 at 67-70).

The first notice provided to Medina on January 14, 2021 was not constitutionally sufficient to satisfy the due process procedures Medina was entitled to. A Notice of Hearing form that states the prisoner is being transferred to maximum custody because he was "an active validated security threat group inmate" is insufficient to apprise prisoner of the reason for his reassignment. *Johnson*, 55 F.4th at 1200. Such notice does "not propose a change in his status, only a continuation of his status." *Id.* The Notice of Hearing provided to Medina stated that the rationale for his transfer was that he was a validated STG inmate. (Doc. 38-1 at 69.) The "Evidence relied on" section states only "STG." Medina was not given a meaningful notice of the reason for his transfer from close custody to maximum custody so as to enable him to prepare a defense to the proposed transfer.

On March 8, 2021, Medina finally received sufficient notice and a second maximum custody placement hearing. (Doc. 67 at 6.) However, like the January 14 notice and hearing, this occurred after Medina was transferred to maximum custody. (*Id.*)

Postdeprivation procedures may provide adequate due process for deprivations of liberty in limited circumstances. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at sake . . . or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process"). But here, the January 14, 2021 hearing, held three days after Medina was transferred to the Browning unit, did not cure the due process violation because ADC did not provide Medina with notice of the reason for transfer to maximum security custody. *Johnson*, 55 F.4th at 1201. The March 8, 2021 hearing did not cure the due process violation because two months had passed. There is no evidence to suggest that providing Medina with a custody redesignation hearing prior to his transfer was overly burdensome or unforeseeable. On these facts, a reasonable jury could conclude that Medina did not receive the constitutionally required due process before he was transferred to maximum custody.

//

### IV. VIABILITY OF CLAIM

At screening, the Court found that Medina pled Eighth and Fourteenth Amendment official capacity claims against Defendant Shinn.[2] (Doc. 7 at 5.) The Court concluded that the claims arose from Shinn's implementation of policies that denied procedural due process to Medina, resulting in his placement in unconstitutional conditions of confinement. (*Id.* at 3.) The Court dismissed Medina's personal capacity claims as superfluous. (*Id.*) A year later, in *Johnson v. Ryan*, the Ninth Circuit held that a prisoner may state a due process claim against correctional employees in their individual capacities for denying the prisoner notice of the factual basis for his transition to maximum custody and an opportunity to present a rebuttal. 55 F.4th 1167, 1201 (9th Cir. 2022). Based on the Ninth Circuit ruling, the Court will grant Medina's request for declaratory relief under Thornell's official capacity and give Medina the opportunity to amend his complaint to include personal capacity claims against the former defendants.[3]

Medina's request for injunctive relief is unworkable and moot. His request is best understood as four separate requests: first, "immediate placement back in Phase 5 [of the

---

[2] In the Summary Judgment Order, the Court substituted Defendant Thornell in place of Defendant Shinn due to Shinn's retirement as ADC Director and Thornell's appointment as his successor. (Doc. 67 at 1.) The Court dismissed the Eighth Amendment claim. (Doc. 67 at 13.)

[3] A plaintiff cannot recover monetary damages against a state official sued in their official capacity. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (holding that the Eleventh Amendment protects states from being sued for damages in federal court). "A suit against a state official in his or her official capacity is not a suit against the official but … against the official's office. As such, it is no different from a suit against the State itself." *Id.* A plaintiff may maintain a lawsuit against state officials in their official capacity for prospective declaratory and injunctive relief because, under the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment "does not … bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). Because Medina cannot recover damages as a matter of law against Thornell in his official capacity, the Court will only consider injunctive and declaratory relief.

Step-Down Program]"; second, immediate placement back in close custody; third, removal of the label that Medina "pose[s] a threat to the safety, security, and orderly operation of the institution"; and finally, that each prison official involved in the alleged wrongdoing be terminated from their position. (Doc. 1 at 34.) According to the record, Medina debriefed on September 10, 2021, and his debriefing was accepted by ADC on December 7, 2021. (Doc. 67 at 6.) The Step-Down Program and debriefing are "mutually exclusive" according to ADC officials. (Doc. 37 at 7.) Since Medina has debriefed, he cannot be returned to the Step-Down Program and his first injunctive request cannot be fulfilled by the Court. (*Id.*) Regarding his second request, as per ADC policy in DO 806, Medina was transferred from maximum custody to close custody after debriefing. (Doc. 38-1 at 27.) Prisoners' injunctive claims for relief regarding the facility where they are incarcerated become moot when the prisoner is no longer subject to those conditions. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). Therefore, Medina's second request is moot because he is no longer in maximum custody. In respect to his third and fourth requests regarding his security label and the termination of prison officials from their employment, the Court cannot manage the administration of the prison in this way. *Armstrong v. Brown*, 768 F.3d 975, 983 (9th Cir. 2014) (holding that a court may "provide guidance and set clear objectives, but it may not attempt to micromanage prison administration"). It is not clear what injunctive relief could be fashioned regarding Medina's claim. Accordingly, Medina's claim for injunctive relief is dismissed.

Medina is entitled to declaratory relief under his official capacity claim against Thornell. Medina requests that the court declare "that defendant's acts, policies, and practices described herein and complained of … violated [Medina's] constitutional rights and the U.S. const[titution]… by depriving [Medina] of [his] liberty interest and procedural due process protections." (Doc. 1 at 34.) Under *Johnson*, ADC violated Medina's due process protections by failing to provide him with notice and a hearing before transferring him to maximum custody. 55 F.4th 1167, 1201 (9th Cir. 2022).

Medina cannot recover monetary or injunctive relief under his official capacity claim against Thornell, but Medina is entitled to declaratory relief under the claim.

Additionally, Medina may now allege personal capacity claims against the Defendants.

## V.   AMENDMENT

In the Screening Order, the Court stated that "Plaintiff's claims are properly construed as brought against the Defendants in their official capacities only." (Doc. 7 at 3.) Considering the Court of Appeals' decision in *Johnson*, Medina may be able to amend his Complaint to state a claim against former Defendants for their individual participation in the violation of Medina's due process rights. In *Johnson*, the Court of Appeals made clear that individuals who were personally involved in the denial of due process may be liable in their individual capacities. *Johnson*, 55 F.4th 1167, 1201 (9th Cir. 2022). Accordingly, the Court will allow Medina to amend his Complaint solely to assert additional Fourteenth Amendment due process claims against former Defendants who were personally involved in the denial of due process. Medina must specifically allege each Defendant's involvement in the denial of due process. Aside from his existing official capacity claim and anticipated individual capacity Fourteenth Amendment due process claims, Medina may not raise any other claims in his amended complaint.

Accordingly,

**IT IS ORDERED** that Medina's request for declaratory relief is **granted.**

**IT IS ORDERED** that within **30 days** of the date of this Order, Plaintiff may file an Amended Complaint to assert Fourteenth Amendment due process claims against former Defendants who were personally involved in the denial of due process and may be liable in their individual capacities.

Dated this 26th day of August, 2024.

_____
Jennifer G. Zipps
United States District Judge